## Simes *versus* Everson *et al.*

*Equity jurisdiction of the District Court of Allegheny county.*

The District Court of Allegheny county has jurisdiction of a bill in equity to compel the redelivery of a note given to the payees and holders, by the maker, on condition and under an agreement that it should be specifically surrendered in case of failure of a contemplated arrangement, where the arrangement actually had failed, and the complainant had retransferred the consideration received from the respondents, according to the agreements; before the bill was filed.

APPEAL from the District Court of *Allegheny county.*

This was an appeal by Samuel Simes, from the decree of the District Court dismissing a bill filed by him on the equity side of the court, against William H. Everson, Barclay Preston, Thomas J. Hoskinson, and Christopher Graff, partners, trading as Everson, Preston & Co.

The bill set forth, that the firm of Kirk & Rhodes, composed of Olivet Kirk, William R. Rhodes, and John Thompson, engaged in the manufacture of cars in Beaver county, Pennsylvania, failed October 24th 1857, being at that time indebted to various persons to the amount of $66,669.71, and possessed of assets to the amount of $59,738.40, and that the respondents were creditors to the amount of from $10,000 to $12,000.

That on January 29th 1859, John Thompson and Olivet Kirk executed an article by which they agreed that, in consideration of a full and final release of all the liabilities of the firm of Kirk & Rhodes, by the creditors thereof, enumerated in an annexed schedule, they would relinquish all claim to the assets of the firm, and pay to the creditors, or trustees appointed by them, $10,000.

That on the same day a writing was drawn up and attached to said article, to be signed by the creditors referred to in said article, releasing the firm from all claims of the creditors against them, and providing for the appointment of trustees to take possession of the assets of the firm, and of the $10,000. Copies of these writings and the schedules annexed, were attached to and made part of the bill.

That the last mentioned of these writings was signed by several of the creditors, and both were shown to the respondents, who approved of the arrangement, but refused to sign the agreement to release, appoint trustees, &c., unless one-half of their claim was paid them in money. On account of this refusal the complainant, on the solicitation of John Thompson and the respondents, on February 21st 1859, took an assignment of $6000 of respondents' claim against Kirk & Rhodes, for which he gave them his note of that date for $6000, payable to their order in

[Simes v. Everson et al.]

thirty days from date. For which note the respondents gave the complainant the following receipt and agreement, viz. :—

" Whereas, we have this day assigned to Samuel Simes, of Philadelphia, six thousand dollars of our claim against Kirk & Rhodes, and for which he has this day given us his note at thirty days from date.

" Now, we agree that said note shall be returned to the said Samuel Simes on the failure of all the creditors of Kirk & Rhodes, or of so many of them as will consummate the same, to sign an agreement for the appointment of trustees, &c., for the creditors of Kirk & Rhodes, now partly signed, and on his the said Samuel Simes cancelling the said transfer of six thousand dollars, and re-assigning the same to us.

" EVERSON, PRESTON & CO.

" Pittsburgh, Penna., February 21st 1859."

That the respondents, at the time of giving the complainant the above receipt and the assignment of $6000 of their claim, and receiving his note, signed the agreement to release and appoint trustees, &c., above referred to, with the following additional proviso, viz. :—

" We, the undersigned, sign and agree to the foregoing agreement, with the following additional thereto, viz., that the same is to be binding and in full force on the signing of this paper by all the creditors in the annexed schedule within thirty days.

" Pittsburgh, February 21st 1859."

That the agreement between the complainant and the respondents, at the time of his giving them his note, was, that if all the creditors named in the schedule annexed to the agreement to release and appoint trustees, &c., heretofore referred to, should sign said agreement within thirty days from February 21st 1859, he would pay his note to the respondents, but that if all of said creditors should not sign said agreement within that time, then his note was to be returned to him upon his re-assigning to the respondents the $6000 of their claim against Kirk & Rhodes, that day assigned to him.

That all the creditors named in the schedule did not sign the agreement within thirty days, but certain specified creditors, whose claims amount in the aggregate to $18,111.09, refused to sign, and have not yet signed it. That others specified in the bill, whose claims amount to $28,251.63, signed the agreement on the condition that it should be void and not binding unless signed by all of the creditors named in the schedule within thirty days from February 21st 1859.

That by reason of this, creditors named in the schedule, whose claims amount to $46,362.72, were not bound by the agreement,

10 WR.—20

[Simes *v.* Everson *et al.*]

and it was therefore void and not binding on any of the parties thereto, and was so considered by the parties, and the arrangements intended to be provided for by the agreements were never carried into effect, nor were trustees ever appointed.

That the complainant executed a re-assignment to the respondents of the $6000 of their claim against Kirk & Rhodes, which they had on February 21st 1859 assigned to him, which re-assignment he caused to be delivered to them on June 21st 1859, at which time he demanded the return of his note; that the respondents refused to return the note, and still have it in their possession.

That on the 10th of June 1859, John Thompson entered into an agreement with P. Kimball and R. Myers, in which he agreed that if Kimball and Myers, or either of them, would obtain the control, by conditional releases, of $53,584.87 of the claims of creditors of Kirk & Rhodes, enumerated in the schedule before referred to, he would convey to them, by good title, all the assets of that firm, and give them his endorsed notes for $10,000; and that on July 20th 1859, the respondents executed an agreement, in which, after reciting part of the agreement last referred to, they agreed to assign to P. Kimball all their claims against Kirk & Rhodes, for which assignment they were to receive Kimball's notes for $10,756.29¾.

That this assignment was to be of the whole amount of their original claim against Kirk & Rhodes, viz.: $12,022.19, which included the $6000 which they had previously assigned to the complainant; and that in this transaction, which was after they had received the re-assignment from the complainant, they acted as owners of the whole claim, as they really were.

Copies of these two last-mentioned agreements were also attached to the bill.

That some time after this, the respondents commenced an action against the complainant on his note in the District Court of Philadelphia, to No. 163 of December Term 1859, which on February 29th 1860 they discontinued, for the purpose and with the intention of bringing suit upon it against the complainant in the county of Allegheny.

The bill, after interrogating the respondents as to these facts, prayed that they be decreed to deliver up the note to the complainant; and further, that they be restrained, by injunction, from proceeding in and from commencing any action at law against complainant on said note; and also that they be restrained from endorsing, assigning, or transferring, in any way, said note to any other person or persons whatever; and for such other relief, &c.

To this bill an answer was filed, and the case referred to a

[Simes *v.* Everson *et al.*]

master, whose report, in the opinion of the court, sustained the material allegations of complainant's bill.

Exceptions were filed to this report, but they were overruled by the master, and renewed in court.

On argument, the court below delivered the following opinion:—

" As the proofs fully sustain the allegations of complainant's bill, he is entitled to the relief prayed for, if the court has jurisdiction.

" But the bill was not filed until after the maturity of the note, and therefore the plaintiff has a complete defence at law to any action that may be brought against him on the note by the defendants or their subsequent endorsees, and in this respect he does not need the aid of a court of equity.

" It is true that we have jurisdiction to enforce the specific performance of contracts in certain cases; but we are of opinion that this agreement does not fall within that class, inasmuch as the plaintiff has a full and adequate remedy at law. This bill must therefore be dismissed, with costs."

Which was the error assigned.

*David Reed* and *W. W. Thomson,* for appellant.

*R. & S. Woods,* for appellees.

The opinion of the court was delivered, January 11th 1864, by

THOMPSON, J.—The object of the plaintiff's application to the equity side of the court below, was to compel the surrender to him by the defendants of his promissory note, given to them on conditions set forth in their agreement, bearing even date therewith, and which provided for its specific surrender, in case of a failure of the arrangement therein contemplated, and a return by him, and cancellation of the assignment which was the consideration therefor. The master, to whom was referred the bill and answer, took the testimony between the parties, and reported that the arrangement contemplated by them, and the conditions upon which Simes was to have become liable upon his note to the defendants, had utterly failed; and also, that the plaintiffs had reassigned and returned the consideration of the note, and demanded its return according to contract, which was refused by the defendants, although they availed themselves of it and used and disposed of the consideration, after its return as their own, and transferred it to other parties.

The learned judges of the District Court had no doubt, and so expressed themselves, that the proofs fully sustained the complainant's bill, and that he was entitled to relief, if the court had jurisdiction, but being of opinion that they had it not, dismissed the bill with costs.

[Simes *v.* Everson *et al.*]

No doubt, I think, could be entertained; that, in a court of general equity jurisdiction, a bill for the specific performance of the agreement to restore the security or note in question would lie. A chancellor would not allow the plaintiff to be harassed by a mere depositary of a note or bond, against his agreement that he had no interest in it. He would enjoin him from suing it and from negotiating it, or at once compel its surrender.

I regard the defendants here as mere bailees of the note, after the contingencies had happened upon which it was to be returned, and that the plaintiff had a substantial interest in enforcing its return. The defendants had brought and discontinued one suit against the plaintiff, and threatened to bring others; thus evincing a determination to claim the proceeds of it from him, in contravention, as we must take it now, of their own positive agreement. To effect this object, they might sell and assign it, although overdue, to others, in or out of the state, or into jurisdictions where even the Statute of Limitations might not be a bar, and thus perpetuate the claim for years, subjecting the maker to process wherever he might go, or his property to attachment, if he should possess any, in other states. Certainly I think his interest is substantial, and such as a court of general equity jurisdiction would protect.

But had the court below jurisdiction? If so, under what head? The District Court of Allegheny county has, by the Act of Assembly of the 12th of June 1839, "all the chancery powers which have been conferred on *any* of the Courts of Common Pleas or District Courts of this Commonwealth," under the regulations and restrictions of the Act of the 16th June 1836.

One head of chancery powers conferred by that act on the Court of Common Pleas of Philadelphia, and of course, by the general expressions used in the Act of 1839, also on the District Court of Allegheny county, is "the affording specific relief when a recovery in damages would be an inadequate remedy:" section 3, Act of 1836.

It is manifest that no action at law could result in a judgment for the recovery of the specific instrument, nor by any possibility in adequate damages; for there would be no standard by which to measure them: nor upon general principles, if the plaintiff has a right to his note, which might be to him, or to his estate, of the value of $6000, is there any adequate remedy at law at all. The opportunity to defend would doubtless be adequate in cases of failure of consideration, because of the nature of the transaction; but if a debt be intended in the origin, it could only be discharged by legal or equitable satisfaction. But that is not like the case of a party who agrees to hold the security, not as an obligation, but as an instrument to be specifically returned. I cannot doubt but that if stocks, notes, bonds, or bills, in such

form as to be transmissible by any holder, were deposited with a bailee for safe-keeping, and he should refuse to deliver them, and threaten to transfer them, the courts, under our limited chancery powers, could restrain him from negotiating them, and compel their surrender to the proper owner. Equivalent doctrine is to be found asserted in Nace *v.* Boyer, 6 Casey 99, and in Graham *v.* Pancoast, Id. 89, although not directly in point. The rule for granting relief in equity, as stated in Brightly's Equity, § 212, is where a party is entitled to a thing *in specie*, and he cannot be otherwise fully compensated. The case of McGowin *v.* Remington, 2 Jones 56, proceeded on this ground. The plaintiff there had left, as a mere act of grace, his surveying instruments, drafts, maps, and office furniture with the defendant, intending to relinquish the business. Afterwards the defendant refused to deliver the things so left. This court affirmed the decree of the court below ordering a surrender of the implements, maps, drafts, and office furniture to the plaintiff. As there was neither a gift nor sale, the court held the defendant to be a bailee or trustee for the plaintiff.

I cannot see any difference between an express bailment from the first, and a bailment by an agreement which makes a thing delivered for one purpose, but a thing bailed dependent on a contingency. That is the case in hand. The plaintiff delivered his note to the defendants as a part of the machinery necessary to effectuate a contemplated compromise between Kirk & Rhodes and their creditors. If the contemplated arrangement succeeded, the defendants were to hold the note and receive the proceeds—if it failed, and the plaintiff restored to them its consideration, they were to surrender up the note. What was their condition after failure of the agreement, and return of the consideration and demand of the note? In equity and good conscience, they were but bailees and trustees for the plaintiff.

I do not lose sight of the general principle, that ordinarily things and contracts merely personal are left to be recovered or redressed at law, but the exceptions to it are where such a remedy is not adequate : 1 Pars. 479. This is what that portion of the statute means, or it means nothing, for it makes no distinction between things personal and things real. I have seldom seen such an exhibit of a determination to disregard a plain agreement as in this case, and an effort to pervert it to a purpose not intended by the parties, and so expressed by them ; and in view of this, I think it would be a reproach to our jurisprudence to permit such an effort to be successful to any extent. We think, according to the facts found by the master, that the plaintiff was entitled to the relief prayed, and consequently that the decree of the District Court, dismissing the bill, must be reversed.

And now, to wit, January 4th 1684, this cause came

[Simes *v.* Everson *et al.*] ·

on to be heard on appeal from the District Court of Allegheny county, and was argued by counsel at the last term of this court, for the Western District of the court, and held under advisement, and now, upon consideration thereof, it is ordered, adjudged, and decreed, that the decree entered in the same by the said District Court, be *reversed;* and it is further ordered and decreed, that the defendants deliver up and return to the complainant or his attorney his said promissory note, dated the 21st of February 1859, at thirty days, for $6000, payable to their order, as set forth in the said bill of complaint; and further, that the said defendants, and every of them, be and are hereby enjoined from endorsing, assigning, or in any way transferring the same, in the mean time, to any other person or persons, and that they pay the costs incurred in this action.

Per Cur.